Argued January 9, affirmed March 6, rehearing denied March 27, 1923.

# KLEIN *v*. PORTLAND.

### (213 Pac. 147.)

**Municipal Corporations—Whether There was a Brace to Hold Trap-door Open was for Jury.**

1. In action for injuries alleged to have been sustained by an employee of a contractor at an auditorium building owned by a city, where the proximate cause of the accident was alleged to be the negligence of defendant in not fastening a trap-door and in not providing a fastening for it when it was open to prevent it from falling, whether a brace for the door was there, or whether it was sufficient if there to hold the door open, was a question for the jury.

**Municipal Corporations—Whether Employee of Contractor in Auditorium Used Reasonable Care to Observe Condition of Trap-door was for Jury.**

2. In action for injuries alleged to have been sustained by an employee of a contractor at an auditorium building owned by a city, where the proximate cause of the accident was alleged to be the negligence of defendant in not fastening a trap-door and in not providing a fastening for it when it was open to prevent it from falling, plaintiff's theory being that there was no brace, and that he was not reasonably to be expected to observe the condition, whether plaintiff used reasonable care was for the jury.

**Landlord and Tenant—"Tenancy" and "License" Distinguished.**

3. A "tenancy" implies some interest in the land leased, while a "license" differs from it in the fact that the latter conveys only a temporary privilege in the use of property usually revocable at the will of the licensor.

**Municipal Corporations—Liability of City to Employee of Contractor in Auditorium That of Licensor to Licensee.**

4. Where a city permitted a festival association to use a municipally owned auditorium building for a flower exhibit without compensation, and the association turned the building over to a contractor to construct a fountain therein, and in the work the city exercised no supervision, the liability of the city to an employee of the contractor, injured while carrying iron pipe through a trap-door, was that of a licensor to a licensee.

---

4. Liability of municipality for unsafe condition of building maintained for public use or amusement, see notes in 7 **Ann. Cas.** 1042; Ann. Cas. 1918D, 115.

**Negligence—Employee of Licensee Stands in Licensee's Shoes.**

5.  Where an employee of a licensee was injured on premises of defendant, he stands in the shoes of the licensee, and is entitled to no greater consideration on the part of the licensor.

**Municipal Corporations — Evidence Justified Charge on Contributory Negligence.**

6.  In action against a city for injury to an employee of a licensee in a municipally owned auditorium building from alleged negligence of the city in not providing a sufficient brace to hold a trapdoor open, evidence *held* sufficient to justify an instruction as to the defense of contributory negligence.

**Negligence—Contributory Negligence is a Question of Fact.**

7.  Contributory negligence is a question of fact, unless no other conclusion can be drawn from the evidence.

**Municipal Corporations—Instruction on City's Duty on Leasing Building Held Justified Under Facts.**

8.  In action by an employee of a licensee in a municipally owned auditorium building for the city's alleged negligence in not providing a sufficient brace for a trap-door, an instruction on the duty of a building owner in leasing it for a particular tenancy or use to use reasonable care and diligence concerning the structure that it be reasonably safe for the purpose for which it was to be used so far as the construction is concerned, and apart entirely from the operation, and to determine whether defendant exercised reasonable care concerning the construction and fastening for the door to keep it open, and to determine whether that, if established, was a failure to exercise reasonable care for the safety of persons using the stairway which a person of ordinary prudence would have exercised, was justified by the facts.

**Municipal Corporations—Submitting Instruction in Negligence Action as to Whether City Retained Control of Auditorium Building Justified Under the Evidence.**

9.  In view of Portland City Charter, Sections 242, 243, providing that the commission shall have power to fix rates to be charged for the use of an auditorium building and to allow its use by the general public free of charge, in an action by an employee of a licensee engaged by an association to construct a fountain on the main floor for its rose festival, where the injury was alleged to be caused by a trap-door not braced falling on the employee while carrying iron pipe through it, submitting an instruction as to whether defendant retained control of the building, and leaving this question of fact to the jury, was justified under the facts.

From Multnomah: J. P. KAVANAUGH, Judge.

5.  Duty of owner to licensees or invitees on premises, see note in 1 Ann. Cas. 209.

Department 1.

The plaintiff brought this action for the recovery of damages in the sum of $5785 for personal injury alleged to have been sustained by him while employed at the auditorium building in the City of Portland. The complaint avers in substance that the plaintiff was employed by one Thomas, a contractor, to assist in installing a fountain on the main floor in that building, and that Thomas in turn was in the employ of the Rose Festival Association of Portland, which had been granted the use of the auditorium for holding therein its annual horticultural exhibit. The plaintiff alleges that while so employed, on June 10, 1919, he was ordered by Thomas to carry certain iron pipes about fifteen feet long and one inch in diameter, into the basement through a large trap-door in the south wing of the building; that while plaintiff was descending the stairs into the basement carrying one of such pipes, the trap-door fell down suddenly and struck him with great force upon the head and back, by reason whereof he sustained permanent personal injuries; and that the proximate cause of this accident was the carelessness and negligence of the defendant, City of Portland, in not fastening said trap-door, and in not providing any kind of fastening for it when it was open so as to prevent it from falling down, and permitting it to be in an unsafe condition. The plaintiff declares that the municipal corporation had charge and control of the auditorium building, directed the work of installing the fountain, and invited the plaintiff into the building and the basement thereof to perform the labor upon which he was engaged.

The defendant answered with general denials and admissions and alleged as a further and separate

defense that at the time of the accident the trap-door
was held open by a substantial brace, which was in
its proper place, holding the door open in a safe and
secure manner; and that plaintiff was familiar with
the manner in which the trap-door was open and had
used the stairway many times prior to the accident.
The answer imputes to the plaintiff negligence, aver-
ring that he attempted to carry downstairs on his
shoulder one or more lengths of heavy pipe and per-
mitted the ends of the same to swing up and down
and that the forward ends struck the brace holding
the trap-door with great violence, dislodging it and
permitting the door to fall upon the plaintiff.

The plaintiff replied, denying the new matter in the
answer. A jury trial resulted in a verdict in favor
of the defendant and against the plaintiff, whereupon
the plaintiff appealed, predicating error on the giving
of certain instructions and the refusal to give others
requested by him.

AFFIRMED. REHEARING DENIED.

For appellant there was a brief over the names of
*Mr. L. E. Schmitt* and *Mr. James H. Ganoe,* with an
oral argument by *Mr. Schmitt.*

For respondent there was a brief over the names of
*Mr. Frank S. Grant,* City Attorney, and *Mr. Stanley
S. Myers,* Deputy City Attorney, with an oral argu-
ment by *Mr. Grant.*

McBRIDE, C. J.—The injury in question resulted
from the falling of a trap-door at the head of a stair-
way in a building, the door being about ten feet in
length and four feet in width, and opening upwards
against a wall at the head of the stairs, standing
almost perpendicular to the floor. The evidence tends

106 Or.—44

to show that without a brace of some kind against it, it would barely stand upright; in fact, one witness was of the opinion that it would not stand upright at all without bracing. The testimony for the plaintiff was to the effect that there was no brace or other appliance to hold the door open, and that for the lack of this it fell upon the plaintiff and occasioned the injury, which was exceedingly severe.

The following facts seem to be so thoroughly settled that they are indisputable: By amendment to the city charter adopted June 5, 1911, the City of Portland was authorized to construct the auditorium. An issue of bonds for that purpose was also authorized, as well as the appointment by the mayor of a committee of five persons to supervise the construction and management of the building. Such control was subsequently transferred to the city council. Sections 242 and 243 of the Portland City charter contain the following provisions:

"The Commission shall have the authority to permit the Oregon Historical Society to occupy such portion of such Public Auditorium as it may designate and upon such terms and conditions as said Commission shall prescribe and said Commission shall have exclusive charge and control of said Auditorium property subject to the provisions herein contained.

"The Commission shall have the power to employ such officers, employees and agents as may be necessary in the efficient and economical carrying out of its duties and to fix and provide for their compensation, but such officers, employees and agents shall not be subject to the Civil Service provisions of the City Charter. The Commission shall have exclusive authority to fix the rates to be charged for the use of said Auditorium; to enter into any contract with theatrical or other companies for the use of said Auditorium for a term not exceeding two years, and shall also have power and authority to allow said Auditorium to be used by the general public, free of

charge, at such times and upon such occasions as it, in its judgment, may determine.

"The Commission shall annually make to the Council of the City of Portland a full report of its doings for the year, including an itemized account of its estimated receipts and expenditures for the ensuing year. Such report shall be made at the same time as reports of the other departments of the city are submitted."

Some days before the accident the Rose Festival Association of Portland, an organization engaged in promoting an annual exhibit of flowers, applied to the council for permission to use the building for the purpose of putting on its annual exhibit, which permission was granted. In the prosecution of this enterprise the association desired to install a fountain on the main exhibition floor or stage, and to do this it was necessary to put piping and connections in the basement, to carry the water to the fountain on the floor above. The contract to install this fountain was let by the association to one Thomas, a cement contractor, for a fixed sum. And beyond the act of the master mechanic of the building in showing Thomas the location of the water connections in the basement, there is no evidence that anyone concerned with the management or supervision of the building exercised any control of the work which Thomas had been engaged to do, or gave any orders to the workmen whom he had employed, including the plaintiff in this case.

1. The evidence is not clear as to who opened the door on the morning of the accident, but it appears probable that the janitor of the building, who was present in and about the auditorium at all times, had opened it so as to permit access of the association employees to their place of work, and perhaps for other purposes connected with the building. The witnesses for the defendant testify that there was a

brace, consisting of a board placed against cleats at the upper end and upon the steps of the stairway, to hold the door in place and prevent it from falling when left open. One of the defendant's witnesses was positive that the brace was so in place on the morning of the accident, while plaintiff's witnesses testified that they saw no such brace and that shortly after the accident none was to be found in the vicinity of the stairs. It was a question for the jury to determine whether the brace was there or not, and whether or not it was sufficient, if there, for the purpose for which it was designed.

2. It was also a question of fact for the jury to determine whether or not in the course of his labors plaintiff used reasonable care under all of the circumstances to observe the condition of the door; the theory of the plaintiff being that there was no brace there and that he was not reasonably to be expected to observe the condition of the door or the lack of a brace, while the theory of the defendant is that the brace was in place and sufficient for the purpose of holding the door and that the plaintiff, in the course of carrying down the iron pipes which he was taking to the basement for the purpose of using them in making the water connections, carelessly allowed the end of one of these pipes to strike the brace and displace it, thus bringing the injury upon himself. It seems at least probable to suppose that a door situated as this was and, according to the testimony of all the witnesses, being barely, if at all, capable of remaining open without a brace, if indeed it would remain open without one, would not be left indefinitely in that condition. The circumstances at least presented a question of fact for the jury to decide, as to whether the brace was there and knocked out of place by some act of the plaintiff, or whether the trap-

door had been left to stand in a precarious and dangerous condition by the negligence of some agent of the defendant.

3. In its charge the court applied to some extent the law of landlord and tenant, alluding to the position of the defendant in the matter as a lessor or licensor and to the Rose Festival Association as a tenant or licensee. There is a technical distinction between these, but for the purposes of this case the general rules of law applicable to one are applicable to the other. A tenancy implies some interest in the land leased, while a license differs from it in the fact that the latter conveys only a temporary privilege in the use of the property, usually revocable at the will of the licensor.

4. In this case we take it that the real condition of the parties, the Rose Festival Association and the city, was that of licensee and licensor. The association was permitted to use the building for its purposes without paying any compensation and, so far as carrying on its work is concerned, the building appears to have been turned over to the association and to Thomas, an independent contractor under it, without interference by the city or any of its employees, who, as before remarked, exercised no supervision or control over plaintiff or the other employees of the association in the work or attempted to direct how they should conduct it.

5. Under these circumstances, the liability of the city to the plaintiff and others was merely the liability of a licensor to a licensee. The city owed no duty to place the premises in any different condition from what they were, when the building was turned over to the association for the purpose of holding its exhibition, because a licensee takes the premises as he finds them only. An employee of the licensee stands

in his shoes and is entitled to no greater consideration on the part of the licensor. His position is in many respects the same as that of a servant of the lessee of the demised premises. (*Bailey et al.* v. *Kelly*, 93 Kan. 723 (145 Pac. 556, L. R. A. 1916D, 1220); *Colorado Mtge. & Inv. Co., Ltd.,* v. *Giacomini*, 55 Colo. 540 (136 Pac. 1039, L. R. A. 1915B, 364, and note 1 thereunder); *Beehler* v. *Daniels, Cornell & Co.*, 18 R. I. 563 (29 Atl. 6, 29 Am. St. Rep. 790, 27 L. R. A. 512); *Mackey* v. *Lonergan*, 221 Mass. 296 (108 N. E. 1062, L. R. A. 1916F, 1098.)

6, 7. The court, among other charges, instructed as to the defense of contributory negligence, the only objection to which instruction is, that there was no evidence of such contributory negligence. It will be seen from the statement that there was some evidence that the negligence of plaintiff might have contributed to his injury, certainly enough to justify the court in submitting the matter to the jury, because the ordinary rule is, that contributory negligence is a question of fact unless no other conclusion can be drawn from the evidence: *Strang* v. *O.-W. R. & N. Co.*, 83 Or. 644 (163 Pac. 1181); *Greenwood* v. *Eastern Oregon Power Co.*, 67 Or. 433 (136 Pac. 336); *Jones* v. *National Laundry Co.*, 66 Or. 218 (133 Pac. 1178).

8. The court also gave the following instruction:

"The duty of the owner of a building in leasing or granting it for a particular tenancy or for a particular use, is to use reasonable care and diligence concerning the structure and construction of the building, that they are reasonably safe for the purposes for which they are to be used so far as the construction is concerned, and apart entirely from operation. Now, you will determine from all the evidence in this case, keeping in mind the particular allegation of negligence alleged in this complaint, whether the city exercised that reasonable care and prudence concern-

ing the construction of this door, and whether it failed to provide any fastening for it, and if you find from a preponderance of the evidence that it failed to provide a fastening for that door, as alleged in the complaint, to keep it open, then you will determine whether that, if established, was a failure to exercise that reasonable care and prudence for the safety of persons using the stairway which a person of ordinary prudence would have exercised in that situation. And if you find from a preponderance of the evidence that no appliance or fastening was provided for that purpose, that the use of the doorway was necessary to the employment in which the plaintiff was engaged and that the failure to provide such fastenings, if any, was the proximate cause of this injury, and further, that a person placed in the situation in which the city was placed in the exercise of reasonable care and diligence for the safety of persons using that door, would have supplied fastenings for that purpose, and if supplied, these fastenings would have averted the injury, then the city would be guilty of negligence in this case upon that second charge of negligence in the complaint.''

We think this instruction is justified by the facts and completely covers everything in the requested instructions that ought to have been given.

9. The objection is made to the court's instruction in regard to whether or not the defendant retained control of the building, and leaving this question of fact to the jury. It is claimed that the sections of the charter above quoted prevent the city from transferring even the temporary control of the building or any part of it to anyone else; but such is not our construction, for the city is expressly permitted to lease the building for a term not to exceed two years, and to permit its use without hire in its discretion. Of course, under all these circumstances, the city would retain a modicum of control of the building to the extent of seeing that it was not injured, and perhaps to the ex-

tent of opening the doors in the morning, including the trap-door in question, and attending to other matters for the convenience of its own employees and the general public. But it is to be remembered that this is not a case where the general public was using the building, but a particular association for its own purposes. And it is not like some of the cases cited by plaintiff where the public was invited to use the building or to go there for some reason peculiar to the owner. Neither the Rose Festival Association nor the plaintiff was an invitee of the city. The city did not ask the association to use its building or to hold an exhibition there. The association requested from the city the privilege of doing so and received that permission, the granting of which privilege was far from amounting to an invitation. The association was not an invitee, but a licensee.

It is also contended that the court erred in submitting to the jury the question as to whether or not the city retained control of the building, but we take it that there was such a condition shown as to justify the instruction complained of. It is not a question of whether or not the city retained a limited control for particular purposes, because a licensor usually does that, but if it surrendered the control so far as the particular work was concerned, the rule as to the duties owed to a licensee would obtain with regard to that particular work. And the weight of the evidence would seem to be that for the purpose of installing this fountain and carrying on all of the work connected with that installation, the control of the building, or that part of it which included the steps and basement, was turned over to Thomas. It is true that White, a witness for the defendant, said that the city never relinquished control, but this answer

was a mere conclusion of law and is explained by his further answer, which is as follows:

"Q. You kept full charge and control of the building, didn't you; the city did, didn't they?

"A. Yes, sir, that is, the city naturally owned the building. We did not relinquish the ownership of the building. Now, what rental would constitute, I don't know. The Rose Festival Association handled their own show. We did not even provide janitor service for them or anything of the sort. We merely furnished the building for them to show in, and they bore all the expenses, excepting probably they did not pay the heat, if there was any heat provided; I don't think there was any."

We think the question as to the control of the building for the purposes of the work was properly left to the jury.

On the whole, we are unable to find any error in the rulings or instructions of the Circuit Court which would justify a reversal of this case. On the contrary, the rulings seem to be in accordance with the weight of authority and the instructions exceedingly fair and as favorable to the plaintiff as the law warrants. The judgment is therefore affirmed.

AFFIRMED.   REHEARING DENIED.

BURNETT, HARRIS and RAND, JJ., concur.