[Decided November 13, 1894.]

## CHRISTENSEN *v.* PACIFIC COAST BORAX CO.

[S. C. 38 Pac. 127.]

CONSTRUCTION OF CONTRACT — TERMINATION OF EMPLOYMENT.— A contráct by which one party agrees to mine, clean, sack, and store ore, and timber any ground worked by him, and the other agrees to pay a specified price for the ore mined, furnish a team to haul the necessary timber, and not to deprive the other of his contract and give it to another,— is a contract of employment for an indefinite time, and does not prevent the employer from discontinuing the work at any time.

APPEAL from Curry: J. C. FULLERTON, Judge.

This is an action by James C. Christensen to recover damages for the alleged breach of a written contract. Briefly, the facts are, that on the first day of April, eighteen hundred and ninety-one, the plaintiff and defendant made and entered into the following contract in writing:—

"April the 1, 1891.

"I the undersigned agree to mine on a pease of ground that has bin lade of for me by W. W. Gray for the Pacifick coast Boarx compna. I agree to mine out, clean, sack in oar house oar none as Borix of Lime on said ground for $23 twenty three dollars per ton. I agree also to timber eny ground that I work on said ground or cause to be worked. Said compna agrees to furnish a team to hall all neserly timber for mine and said oar to ware house. Said compny agrees not to deprive this contractor of his contract and give it to an other.

"Signed by contractor on this line: J. CHIRSTENSEN.

"Witnesses: LAURA GRAY.

"THE PACIFICK COAST BORIX COMPNA,

"W. W. GRAY, Agent."

[Sealed in the district of Chetco, Oregon.]

Immediately thereafter plaintiff commenced work by running tunnels, timbering, constructing the necessary buildings for the operation of the mine, and in mining out and delivering to the defendant borate of lime, and continued so to work until about the fifteenth day of October, eighteen hundred and ninety-two, when the defendant, having concluded to shut down its mine and cease operations, notified him that he must cease work within thirty days, and that it would not receive or pay for any borate of lime mined by him after that time. In pursuance of this notice, plaintiff ceased work, and on the sixteenth day of August, eighteen hundred and ninety-three, claiming that by the terms of the contract he had a right to mine out, and defendant was bound to receive and pay for, at the stipulated price, all the borate of lime to be found in the ground referred to in the contract, commenced this action to recover fifteen thousand dollars as damages for the loss of future profits he would have made had he been allowed to mine out all the ore in the ground so laid off for him. The trial court having adopted the construction of the contract contended for by the plaintiff, a trial resulted in a verdict and judgment in his favor for the amount claimed, and defendant appeals.

REVERSED.

*Messrs. S. H. Hazard,* and*Warren Gregory,* for Appellant.

*Mr. William R. Willis,* for Respondent.

Opinion by MR. CHIEF JUSTICE BEAN.

The record contains numerous assignments of error which have been ably presented and argued by counsel, but the assignment based upon the construction of the contract by the trial court is the only one necessary to consider at this time. It goes without saying that the

agreement is inartificially drawn and evidently not by a professional hand.    In orthography, grammar, and arrangement it is certainly not a model, yet it is the duty of the court to ascertain, if possible, from the language used, the intention of the parties, however imperfectly expressed.    It certainly does not purport to be a lease to the plaintiff of the ground described therein, for a lease is a contract for the possession and profit of land by the lessee, and a recompense of rent or increase to the lessor, and is the grant of an estate in the land.    No estate in or right to the possession or profit of the ground described therein is granted to the plaintiff by the contract under consideration, nor is any rent or recompense reserved to the defendant.    Nor do we think it can be construed as a license, for a license is an authority to do some act or series of acts on the land of another for the benefit of the licensee without passing any estate in the land; and when the license is to mine upon the land of another the right of property in the minerals when they are severed from the soil vests in the licensee: 15 Am. and Eng. Ency. 594; *Wheeler* v. *West,* 71 Cal. 126, 11 Pac. 871.    Now, in this case, the plaintiff was not authorized to mine on the land for his own benefit, nor did the ore when taken out belong to him. As we view the contract, it is simply one of employment, under which plaintiff was to work or mine for the defendant, and as a compensation therefor to receive twenty-three dollars a ton for all ore taken out by him and delivered in the warehouse of the company, and created the relation of employer and employé between the parties.    The question then, is whether, under the terms of the contract, the defendant had the right, upon reasonable notice, to terminate the arrangement into which the parties had entered, and to discharge the plaintiff from its employment. In its solution we are called upon to inquire what the stipulations of the contract between the parties were.    To

what did they agree?  It is not a question as to what would have been a reasonable contract, nor what it may be supposed or conjectured the parties contemplated or anticipated when it was entered into, nor whether they contracted on the supposition that the business would be carried on until all the ore in the land described had been taken out.  The only question is, What was the intent of the parties, as gathered from the language used, and to what did they bind themselves?  We cannot make a contract for them, or add to any of the stipulations or terms of the agreement into which they have entered, nor can we give to a mere expectation or anticipation the binding force of a covenant.  While a court, in construing a contract, may take into consideration the situation of the parties, the object they must have had in view, and all the surrounding circumstances, still the language of the instrument must determine to what the parties have bound themselves.

Now what are the stipulations of the contract in question?  On the part of the plaintiff they are: (1) that he will mine on a certain piece of ground staked out by the agent of the company; (2) that he will clean, sack, and put in the orehouse all ore mined by him; (3) that he will timber any ground worked or caused to be worked by him.  On the part of the defendant, the stipulations are: (1) that it will pay plaintiff twenty-three dollars a ton for ore mined by him when cleaned, sacked, and put in the orehouse; (2) that it will furnish a team to haul all necessary timber for the mine, and ore to the warehouse of the company; and (3) that it will not deprive plaintiff of his contract, and give it to another.  These are all the stipulations on the part of either party.  The contract makes no provision for its duration, or the area of ground the plaintiff shall mine out, or what quantity of ore defendant shall

26 OR.—33.

receive and pay for; and there is nothing in the language used to define the term of plaintiff's employment, or to indicate that the contract was for an entire and specific undertaking.   Upon these questions it is entirely silent, and, perhaps, designedly so.   It may be neither party was willing to be bound in these particulars.   The mining scheme, which was the subject of the contract, was a mere experiment.   The parties to it were equally ignorant, when they made the agreement, as to the extent of the mine, the quantity of ore in the ground, or whether it could be profitably mined and handled.   The plaintiff, after prospecting, might determine that he could not mine at a profit, or he might find more ore than defendant could handle or dispose of in the market at a profit to itself.   Under these circumstances it is easy to conceive that plaintiff might have been unwilling to bind himself to perform any definite amount of work or mine out any given quantity of ore; and it is equally easy to find a motive for defendant's refusal to agree to receive and pay for any definite quantity of ore.   If, then, we should construe the contract so as to bind the plaintiff to mine out all the ore to be found in the ground described, or the defendant to take and pay for the same, we should be in danger of imposing a liability which both parties purposely declined to assume.   And if it be admitted that the parties contemplated or expected that the arrangement should continue until all the ore was mined out, it by no means follows that we are at liberty to treat the agreement as containing a covenant to that effect, when they have each purposely or unintentionally omitted any stipulation upon the subject.

"Where parties have entered into written engagements with express stipulations," says Lord DENMAN, "it is manifestly not desirable to extend them by implications: the presumption is that, having expressed some, they have

expressed all the conditions by which they intend to be bound under that instrument. It is possible that each party to the present instrument may have contracted on the supposition that the business would in fact be carried on, and the service in fact continued, during the three years, and yet neither party might have been 'willing to bind themselves to that effect: and it is one thing for the court to effectuate the intention of the parties to the extent to which they may have, even imperfectly, expressed themselves, and another to add to the instrument all such covenants as upon a full consideration the court may deem fitting for completing the intentions of the parties, but which they, either purposely or unintentionally, have omitted. The former is but the application of a rule of construction to that which is written; the latter adds to the obligations by which the parties have bound themselves, and is of course quite unauthorized, as well as liable to great practical injustice in the application. The breach here assigned by the plaintiff assumes that the defendant, at however great loss to himself, was bound to continue his business for three years: but the defendant has not covenanted to do so": *Aspdin* v. *Austin*, 48 Eng. C. L. (5 Q. B.), 682. Looking, then, at the expressed terms of the agreement and its nature and subject matter, it seems to us clear that it does not bind and was not intended to bind the defendant to permit and allow plaintiff to mine out all the ore to be found in the ground referred to, and to receive and pay for the same, but is a simple contract of employment for an indefinite time, which could be dissolved at the pleasure of the defendant at any time it saw proper to shut down its mine: 1 Lawson's Rights and Remedies, § 282; *Harper* v. *Hassard*, 118 Mass. 187; *Lord* v. *Goldberg*, 81 Cal. 596, 15 Am. St. Rep. 82, 22 Pac. 1126; *Orr* v. *Ward*, 73 Ill. 318; *Aspdin* v. *Austin*, 48 Eng. C. L.

670; *Howard* v. *East Tennessee Railway Company*, 91 Ala. 268, 8 So. 868.

Much stress was laid, at the argument, on the stipulation that defendant should not deprive plaintiff of his contract and give it to another, as evincing an intention that he should have the right to mine out all the ore to be found in the ground described in the contract, but we think it can bear no such construction. The stipulation seems to have been inserted in the contract to secure a preference to the plaintiff in the work of mining that particular piece of ground so long as the company should continue its business and need the ore therefrom, but not to obligate it to operate the mine, and receive and pay for ore mined by plaintiff, for any definite length of time. There is nothing in this stipulation which either expressly or by implication prohibited the defendant from discontinuing the operation of the mine at its pleasure, but only that so long as the mine should be in operation and it was receiving and handling ore from the land described in the contract it was bound to give plaintiff the preference in working it. This, it seems to us, is the manifest object of the stipulation. It follows from what has been said that the court below was in error in construing the contract as a binding obligation on the defendant to permit plaintiff to mine out all the ore contained in the land described therein, and for this reason the judgment must be reversed and a new trial awarded.

REVERSED.