Argued February 24; affirmed April 5; rehearing denied June 7, 1932.

## FORSYTH *v.* NATHANSOHN

(9 P. (2d) 1036, 11 P. (2d) 1065)

*Robert J. Creamer,* of Portland, for appellant.

*Barnett Goldstein* and *W. S. Shenker,* both of Portland, for respondent.

ROSSMAN, J. The two assignments of error argued in appellant's brief submit only one question, that is, the validity of the written instrument which constitutes the foundation of this action. The complaint refers to that instrument as "a lease" while the answer describes it as "a contract for trapping privileges." The instrument, which is attached to the complaint as an exhibit, describes the land subject to its covenants, thus:

"Nine hundred twenty-eight and 90/100ths (928.90) acres situate in Sections Twenty-six (26), Thirty-five (35) and Thirty-six (36), in Township Four (4) South of Range Forty-two (42) E., B. M., in the County of Bonneville, State of Idaho; and all of Section One (1) in Township Five (5) * * * a total acreage of 1,568.90 acres."

After arguing that the aforementioned instrument is a lease, the defendant contends that since it fails to describe definitely which 1,568.90 acres out of the total 1,920 acres in the three sections is subject to the terms of this instrument, it is invalid.

The material portions of this instrument, which is entitled "Trapping Lease and Option" are:

"Witnesseth, That the said party of the first part for and in consideration of the covenants and agreements hereinafter mentioned to be kept and performed by the party of the second part, has, by these presents, demised and leased to the party of the second part the Trapping Privileges on the following described lands, to wit: * * * and the party of the first part hereby specifically stipulates that he has full power and authority to grant a lease on said lands herein referred to, and does by these presents demise and lease to the said party of the second part the lands above described for TRAPPING PURPOSES ONLY * * * and the party of the second part in consideration of the leasing of the premises as above set forth for TRAPPING PURPOSES ONLY, covenants and agrees with the party of the first part to pay as rent * * *."

The instrument further provides that all improvements placed upon the premises shall remain thereon "at the expiration date or cancellation date of this lease"; that the defendant shall be entitled to the occupancy of a log house located on the premises; that the plaintiff "reserves all grazing rights on said lands covered by this lease; and further reserves the right to trap coyotes and wildcats"; that the defendant shall have the right "to assign this lease and option to the La Pine Fur Farm, Inc., of Portland"; that the nonpayment of rent or the breach of any covenant shall entitle the plaintiff to re-enter; that at the expiration of the term the defendant shall peaceably surrender "the aforesaid rented trapping privileges and other considerations granted by the terms of this lease" to the plaintiff.

It will be observed from what we have said that the complaint refers to this instrument as a lease, and that

the defendant's answer describes it as "a contract for trapping privileges." During the course of the trial the defendant's attorney thus expressed his understanding of its nature: "The document is a license rather than a lease * * *. A license is the right to do certain things on the lands of another, which this is, and a lease is a conveyance of land * * * for life or years."

The parties have now undergone a change of opinion as to the nature of the instrument. The defendant's brief insists it is "a five-year lease" and argues that since the premises affected by it are not specifically bounded, "the lease" is void. The plaintiff's brief urges that the instrument is "an exclusive license or privilege to go upon certain described lands for trapping purposes only."

■■ The distinction between a license and a lease pointed out in *Thomas v. Sorrel,* Vaughan, 351, in 1672, has not been improved upon. We quote from it:

"Licence.—A dispensation or licence properly passeth no interest, nor alters or transfers property in anything, but only makes an action lawful, which without it had been unlawful. As a licence to go beyond the seas, to hunt in a man's park, to come into his house, are only actions which without licence had been unlawful. But a licence to hunt in a man's park and carry away the deer killed to his own use, to cut down a tree in a man's ground, and to carry it away the next day after to his own use, are licences as to the acts of hunting and cutting down the tree, but as to carrying away of the deer killed and tree cut down, they are grants. So to licence a man to eat my meat, or to fire the wood in my chimney to warm him by; as to the actions of eating, firing my wood and warming him, they are licences; but it is consequent necessarily to those actions that my property be destroyed in the meat eaten, and in the wood burnt. So as in some

cases by consequent and not directly, and as its effect, a dispensation or licence may destroy and alter property.''

In *McCarthy v. Kiernan*, 118 Or. 55 (245 P. 727), the decision, written by Mr. Justice BELT, distinguished a license from a lease in the following manner:

''A license is an authority to do some particular act or series of acts on the land of another for the benefit of the licensee without passing any estate in the land: Christensen v. Pacific Coast Borax Co., 26 Or. 302 (38 P. 127); Stinson v. Hardy, 27 Or. 584 (41 P. 116); 37 C. J. 279; 16 R. C. L. 549. The distinction between a license and a lease is well considered in Christensen v. Borax Co., supra. Also see Stinson v. Hardy, supra; Klein v. Portland, 106 Or. 686 (213 P. 147); 35 C. J. 954.

''It is clear from the agreement of the parties it was not intended to pass any estate in this land. Plaintiff was merely given the exclusive privilege to use the water frontage of these islands for the particular purpose of mooring houseboats, launches and other water craft. The licensor, under the terms of this contract, could use this property in any way not inconsistent with the rights of the licensee. It is to be observed that such operative words as 'demise,' 'grant,' 'lease,' and 'let,' ordinarily found in leases, are not used in the instrument under consideration: Stinson v. Hardy, supra.''

See Tiffany, Landlord and Tenant, pp. 20 and 23. Some of the words of the instrument are foreign to a license, but since the parties intended that the defendant should have nothing more than the privilege of going upon the premises to trap wild animals, we are convinced that the instrument confers a license and is not a lease. The defendant does not question its sufficiency to operate as a license. Being of the opinion that the instrument grants a license and is not a lease,

it is unnecessary for us to express an opinion upon the question whether the description of the premises is so indefinite that if the instrument were a lease it would be invalid.

It follows that the judgment of the circuit court will be affirmed.

BEAN, C. J., RAND and KELLY, JJ., concur.

---

Petition for rehearing denied June 7, 1932.

ON PETITION FOR REHEARING

(11 P. (2d) 1065)

ROSSMAN, J. Appellant's counsel argues that the instrument signed by the parties conferred upon the defendant a profit a prendre, and not merely a license. His argument is reinforced by citations to *Bingham v. Salene,* 15 Or. 208 (14 P. 523, 3 Am. St. Rep. 152); *Wickham v. Hawker,* 7 Mees. & W. 63; *Ewart v. Graham,* 7 H. L. Cas. 331; and Crabb's Real Property 125. The authorities cited by him to which can be added *Council v. Sanderlin,* 183 N. C. 253 (111 S. E. 365, 32 A. L. R. 1527), hold that the right to hunt or trap wild game upon the lands of another and carry away the game or fowl killed or trapped is a profit a prendre. Agreements creating profits a prendre are subject to the Statute of Frauds: *Bingham v. Salene,* supra; *Council v. Sanderlin,* supra; *Wood v. Leadbetter,* 13 Mees. & W. 838; *State v. Mallory,* 73 Ark. 236 (83 S. W. 955; 67 L. R. A. 773, 3 Ann. Cas. 852); 1 Thompson on Real Property, § 234; note Ann. Cas. 1914B, p. 545.

■ A profit a prendre confers two rights: a license which authorizes the licensee to enter upon the lands of the licensor, and a grant to the licensee of the things

which he is permitted to carry away from those lands. If it were clear that the agreement of the parties contemplated that the trapping of muskrats was to be done upon the plaintiff's property, then the privilege conferred by the instrument mentioned in our previous decision would amount to a profit a prendre. But the evidence, as well as the answer, suggests that possibly the trapping was to be done not upon the plaintiff's land but in Gray's Lake and its marshes adjacent to the land in question, and that the plaintiff's property was useful only as a ready means of access to the water. It may be that the trapping was to be done directly upon the plaintiff's property, but after reading the testimony again the impression remains that the plaintiff's land was wanted principally as a site from which the trapping operations could be pursued. Our opinion is reinforced by the statement made by the defendant's counsel in the circuit court that "the document is a license." If the instrument conferred only a license, and was not a lease (the defendant previously has urged this court to hold it a lease) then it was not subject to the Statute of Frauds. Since it was evident that neither party intended that the instrument should be void, and since it was reasonably capable of construction as a license, we adopted the construction of it suggested by the defendant in the circuit court and held it a license. We still believe that that conclusion is warranted.

■ But in the event that the instrument confers a profit a prendre, the Statute of Frauds offers no insurmountable obstacle to a recovery. A profit a prendre, like a lease, operates as a conveyance. Two of the trappers whom the defendant sent upon the expedition to trap muskrats in the marshes and lake testified that they reached the plaintiff's land for the

purpose of proceeding with the work. The plaintiff testified that they not only reached his land but remained in possession with traps and other equipment until they were ordered to return to Portland by the defendant, due to his inability to finance the venture. The evidence indicates that the defendant paid an installment upon the consideration exacted by the contract. These circumstances made the imperfect description of the land a matter of no moment and took the contract out of the Statute of Frauds so far as the description of the premises was concerned: *Bitney v. Grim,* 73 Or. 257 (144 P. 490); *Zinn v. Knopes,* 111 Wash. 606 (191 P. 822); Tiffany, Landlord and Tenant, p. 257; 27 C. J., Statute of Frauds, p. 355, § 434; 25 R. C. L., p. 655, § 287.

It follows from the foregoing that the petition for a rehearing will be denied.

BEAN, C. J., RAND and KELLY, JJ., concur.