Argued September 20; affirmed October 3, 1933

## SANDY HOLDING CO. *v.* FERRO

(25 P. (2d) 561)

*Leroy Lomax,* of Portland (Lomax & Lomax, of Portland, on the brief), for appellant.

*William Hammond,* of Oregon City, for respondent.

BAILEY, J. This suit was instituted on September 12, 1932, by Sandy Holding Co., a corporation, against Mike Ferro, to enjoin the defendant from removing cordwood from a quarter-section of land owned by the plaintiff in Clackamas county, and to require the defendant to account for other cordwood alleged to have been wrongfully removed by him from said land.

A demurrer to the original complaint was sustained and an amended complaint was filed on September 29, 1932, to which, after demurrer had been overruled, defendant filed his answer.

After the institution of this suit the defendant continued to remove cordwood from the premises until enjoined by the court on or about October 17 of that year.

On or about June 1, 1922, W. G. Weber, then the owner of this quarter-section, by contract in writing sold to J. B. Jonsrud the right for a period of ten years, to June 1, 1932, to remove the timber from all of said tract of land except approximately seven acres. On June 16, 1928, Jonsrud and his wife and Roy Funk, who had some interest in the personal property, and the latter's wife, by written contract agreed to sell to one William Dippold the personal property located on said quarter-section, and in addition granted to Dippold "the right to use, occupy and cut timber" from the said quarter-section until June 1, 1932, provided Dippold paid the taxes for the year 1928 thereon and for every succeeding year that he might occupy the property.

Later, all the right of Dippold in and to said contract was assigned to J. B. Jonsrud. On February 24, 1930, a similar contract was entered into between Jons-

rud and M. Linden and Louis Pearson, operating under the name of L. & P. Lumber Company. Said contract was for the sale of personal property situated on the premises and granted the right until June 1, 1932, to cut and remove the timber from the premises. Both of the foregoing assignments by Jonsrud of the right to remove the timber from said land were consented to by the Clackamas County Bank, then owner of said premises.

After the last mentioned contract was executed Linden and Pearson sold whatever right they had acquired to cut and remove the timber to Glenn Byer, who on April 15, 1930, sold the same to the defendant. There was, however, no written contract or assignment evidencing these two latter transactions.

On or about May 15, 1931, the Clackamas County Bank conveyed this tract of land to the Sandy Holding Co. Prior thereto J. B. Jonsrud had transferred to the Clackamas County Bank all his right, title and interest in and to the contract between himself and Linden and Pearson; and on March 1, 1932, the Clackamas County Bank transferred its right in said contract to the Sandy Holding Co.

The only right which defendant had to remove the timber from this land was by virtue of the contract between Jonsrud and Linden and Pearson, except as the same was modified by agreement between him and the plaintiff. It is the defendant's contention that the plaintiff herein had given him the right until December 1, 1932, or so much time thereafter as might be necessary, in which to remove from the premises the timber which had already been cut into cordwood, whereas the plaintiff asserts that the only extension granted was to August 1, 1932.

During the year 1931 the Clackamas County Bank several times called the defendant's attention to the fact that the taxes on the quarter-section had not been paid according to the contract, and on June 11 of the same year advised the defendant that it had sold the property to the Sandy Holding Co. and that the defendant must furnish to that company a tax receipt covering the 1930 taxes.

On March 19, 1932, the plaintiff wrote to the defendant, calling his attention to the provision in the contract as to the payment of the taxes and stating that one-half of the 1931 taxes would be delinquent after May 5 and that:

"Unless the 1931 taxes are paid by May 5, the contract for the timber will be void, and it will not be permissible to remove any timber after that date, and in event that the taxes are paid before that date, the contract definitely expires June 1st, 1932, and we are writing you at this time so that you will arrange to have all the wood off the premises at that date, as we contemplate selling the land at the very earliest possible date after June 1st.

"We ask that you arrange now to get all the wood off by May 5th unless you intend to pay the 1931 taxes and if you do pay the 1931 taxes then be certain to arrange for its removal completely by June 1st."

Later, on June 12 following, the plaintiff wrote to an attorney who was presumed to represent the defendant, referring to an extension of time and saying:

"This extension of time was conditioned upon the full payment of the 1931 taxes on the premises.

"We find that only the first one-half of such taxes has been paid. If Mike continues unto the first of August, he must supply us this week with a full paid tax receipt, covering the 1931 taxes on said premises."

On the same date a letter was written by the plaintiff to the defendant, stating that defendant would recall that the additional time to August 1, 1932, had been granted him to remove his cordwood from the premises on the understanding that he would pay all the 1931 taxes on the premises, and that unless a receipt was presented to plaintiff by July 16 showing that all the taxes had been paid, the plaintiff would stop the further removal of wood on the following Monday. The defendant was further advised that: "We wish to call your attention to the fact that under any consideration your time expires August 1st, and that there will be no chance to get an extension of time unless you desire to purchase the entire premises".

■ No error was committed by the trial court in overruling the demurrer to the amended complaint based on the ground that plaintiff had a speedy and adequate remedy at law, to wit: an action for damages for the value of the logs which the defendant converted to his own use. The amended complaint is not limited to recovery for the logs converted by the defendant. It alleges, among other things, that the plaintiff is the owner of the land and all timber situated thereon, also all cordwood, pulp wood and other timber products which have been felled but not removed from the land; that the defendant has no right, title or interest in or to the land, cordwood, pulp wood or other timber products; and that said defendant had wrongfully and unlawfully removed cordwood and was threatening to continue to remove the same unless enjoined by the court. The prayer of the complaint is for an injunction against the defendants removing cordwood from the premises, and for an accounting for such cordwood as had unlawfully been removed therefrom.

In the case of *Anderson v. Miami Lumber Company*, 59 Or. 149 (116 P. 1056), the plaintiff brought a suit to enjoin the defendant from removing from land owned by the plaintiff certain trees which had been cut into saw logs and which had not been removed prior to the expiration of the contract. To the argument that a court of equity should not interfere in a case of that kind, this court answered:

"There remains but one more question to be disposed of, namely, the objection that equity will not interfere in cases of this character, but will leave the plaintiff to his remedy at law. That equity will interfere to prevent a continuous trespass or repeated trespasses involving a multiplicity of suits is elementary. Its jurisdiction has been invoked in many of the cases of this character cited in this opinion, and is upheld in Roots v. Boring Junction Lumber Co., 50 Or. 298 (92 P. 811, 94 P. 182)."

In *Roots v. Boring Junction Lumber Co.*, 50 Or. 298 (92 P. 811, 94 P. 182), this court quoted with approval from 2 Story, Eq. Jur., § 917, as follows:

"The inadequacy of the remedy at common law, as well to prevent waste as to give redress for waste already committed, is unquestionable, and there is no wonder that the resort to the court of law has in a great measure fallen into disuse.  *  *  *  The remedy by a bill in equity is so much more easy, expeditious and complete, that it is almost invariably resorted to. By such a bill not only may future waste be prevented, but, as we have already seen, an account may be decreed and a compensation given for past waste."  ·

■ Having acquired jurisdiction to prevent the further removal of cordwood, the court could and should retain jurisdiction to require defendant to ac-

count for the cordwood removed: *Sheridan v. Mc-Mullen,* 12 Or. 150 (6 P. 497) ; *Roots v. Boring Junction Lumber Co.,* supra.

■ The defendant further asserts that the time for removing the cordwood had been extended by the plaintiff. According to the defendant's story, Mr. Proctor, an officer of the plaintiff corporation, came to the quarter-section about the middle of May, 1932. At that time there remained eight acres of standing timber which the defendant could, but had not yet, cut. Upon the agreement of the defendant to cease from cutting any more timber, and to build and improve roads on the premises the defendant was, according to his version, granted by plaintiff until December 1, 1932, or such further time as might be necessary, in which to remove the timber already felled. Due to this alleged extension of time defendant asserts that he delayed removing the cordwood from the property, which he could have removed within two weeks, had the plaintiff not granted him this extension of time.

The trial court found that the time had, in accord with plaintiff's account of the agreement, been extended to August 1, 1932, and not beyond that date; and we concur in this finding. According to the defendant's testimony and that of one of his witnesses who built and improved the roads, the construction and improving of these roads were necessary in order to move the cordwood and unquestionably had nothing to do with any alleged extension of time by the plaintiff. No good purpose would be served by referring in detail to the testimony upon which our conclusion in this respect is based.

The defendant had ample time in which to remove all the cordwood on the premises after being notified by the plaintiff of the time within which the same must be removed.

■ The original contract between Weber, the then owner of the land, and Jonsrud for the removal of the timber was not produced, but the uncontradicted evidence is that it granted to Jonsrud the right, for a period of ten years from June 1, 1922, to remove the timber from the land, and that the terms of the original contract, relating to the cutting and removal of the timber, were substantially the same as those of the contract from Jonsrud to Linden and Pearson, under whom the defendant claims. In the latter contract certain personal property was sold to Linden and Pearson at the agreed price of $1,000. After referring to said sale the contract provides that:

"In consideration of the payment of the above-mentioned sum of $1,000 it is agreed that the second party [Linden and Pearson] shall have the right to cut the merchantable saw timber from the following described premises: [describing the quarter-section of land].

"It is understood that in event the second parties shall have made all of the payments in accordance with this agreement, then they shall have the period of time until June 1st, 1932, in which to remove said timber, and during which time they shall have the right to occupy said premises and to operate a timber products mill, also the right to use any water from said premises in their milling operations, also the right to log in any manner they deem advisable."

It was further provided in the contract that Linden and Pearson should pay the taxes for the years 1928 to 1931, inclusive, and that upon failure to pay the same the contract should become null and void at the

option of the holder thereof. The second half of the 1931 taxes was never paid by the defendant, although frequent demands were made upon him to pay the same and the time in which to remove the cordwood from the premises was extended to August 1, 1932, on the condition that he would pay those taxes and would cease cutting timber on the property.

The contract between Jonsrud and Linden and Pearson under which the defendant claims did not expressly sell to Linden and Pearson the timber on the quarter-section of land, but did grant to them the right until June 1, 1932, to cut the same and remove it from the premises. In *Anderson v. Miami Lumber Company,* supra, the owner of the real property conveyed to the predecessor in interest of Miami Lumber Company all the timber situated on a certain tract of land. The deed there contained a provision that the grantee should remove such timber within a period of five years and that "the title to all timber not so removed and remaining on said premises at the expiration of said period of five years shall revert to and become absolutely vested in the grantors herein". This court, after reviewing many authorities on the subject, held that the right of removal terminated at the expiration of the time limit.

In *Kreinbring v. Mathews,* 81 Or. 243 (159 P. 75), the court said:

"The conveyance from Wells to Kinney purports to sell and convey all the timber upon the southwest quarter designated in the deed, coupled with a condition that it shall be removed within ten years from the date thereof, which limitation would expire on December 5, 1916. Such a conveyance amounts only to a sale of all the timber that the grantee can cut and remove before that date."

In *Kee v. Carver,* 95 Or. 406 (187 P. 1116), the owner of the property attempted to sell and convey to the vendee all the timber on certain described land, the agreement between the parties providing that the vendee should remove the same before a fixed date. With reference to that contract, the court observed:

"As decided in Anderson v. Miami Lumber Co., 59 Or. 149 (116 P. 1056), the contract here in question operates to convey the present title to all the timber on the tract, but the estate thus created was one upon condition liable to be defeated on failure of the grantee to remove the timber within the time specified. If this had been a cash transaction and the parties had agreed upon the amount of the purchase price, the defendant by paying the money in advance would have purchased at the risk of the defeat of his title by the condition subsequent, that he should remove the timber by a certain time, and he would have had no ground for recovering money from the plaintiff."

In *Hodges v. Geo. T. Mickle Lumber Co.,* 124 Or. 515 (264 P. 850), this court held:

"The purchaser of standing timber for a cash consideration, under an agreement to remove it within a specified time cannot recover, or receive credit for, money paid, upon his title to the timber being defeated by his failure to remove the timber within the time specified therefor in the contract of purchase": citing numerous authorities.

And in the case of *Coquille M. & T. Co. v. Dollar Co.,* 132 Or. 453 (285 P. 244), this court, citing authorities in support thereof, said:

"This court, in harmony with the decisions of other courts, has several times held that when a logging contract specifies a definite term within which the buyer may remove the timber from the land of the seller, his right terminates at the conclusion of the term even though timber remains upon the land and the contract contains no provision for a forfeiture."

The contract under which the defendant claims merely granted his predecessor in interest the right to remove the timber before a certain date. So much of the timber as was removed by him before the date fixed in the contract, or any extension thereof, would belong to him. Such of the timber as had not been removed by him, although cut, within the time agreed upon, would belong to the owner of the land, and the defendant would have no interest therein. The defendant, therefore, had no right to remove any cordwood from plaintiff's land after August 1, 1932, and should account for the value thereof at the place from which it was removed at the time of its removal.

The evidence fails to disclose how much cordwood was on the premises on August 1, 1932, but there is testimony to the effect that on September 14 and 15 of that year there were on the quarter-section of land 549½ cords of Nos. 1 and 2 old-growth fir, pulp wood and second-growth fir, and that on October 17 there remained on the premises 238⅛ cords of the above classification, showing that 314⅜ cords had been removed after the summons had been served upon the defendant and prior to the issuance of the injunction. In addition to the foregoing testimony there was evidence of defendant himself that he removed at least 50 cords during the month of August. A large part of the wood which was removed after August 1, 1932, appears to have been piled on other land some distance from plaintiff's premises. The value of this cordwood on plaintiff's premises was, according to the testimony, from $2 to $2.75 per cord, depending upon the quality of the wood.

The circuit court entered a decree granting to the plaintiff a lien of $450 on wood cut and left on plain-

tiff's premises and on the wood which had been removed therefrom and piled elsewhere, as above stated; and further providing that if the defendant should pay the $450 within 10 days from the date of the decree, the defendant should have until August 1, 1933, in which to remove the wood which had been cut and left on plaintiff's premises; and in event that the $450 should not be paid by that time, the lien should be foreclosed and the cordwood above referred to, or so much thereof as might be necessary to satisfy the plaintiff's lien, should be sold, and that if the cordwood did not sell for enough to pay the costs and expenses of sale, the compensation of the custodian placed in charge of said wood, and the $450, the plaintiff should have a deficiency judgment for the amount remaining unpaid.

Thereafter, on November 30, 1932, the court entered a decree foreclosing the lien and ordering the cordwood to be sold, or so much thereof as might be necessary to pay the costs of the sale, the fees of the keeper placed in charge of the wood, at the rate of not to exceed $1 per day from November 30, 1932, to the date of the sale, and the amount of the lien; providing further that the cordwood cut and remaining on plaintiff's land should be the first sold, and that if all the wood did not sell for enough to pay the costs of sale, the keeper's fees and the $450 lien of the plaintiff, the latter should have a deficiency judgment against the defendant.

■ The defendant has appealed from both of these decrees. One of his assignments of error is that the court had no jurisdiction to impose a lien upon the cordwood.

The plaintiff in asking for an accounting for the cordwood unlawfully removed from his land by the

defendant has treated the cordwood as having been converted by the defendant to his own use. Under that view of the case, title thereto would not pass to the defendant until judgment or decree for the value thereof had been satisfied. Bowers on the Law of Conversion, § 709, after referring to the early English rule relating to the vesting of title, says:

"But the present English rule is, that it is not the judgment alone, but judgment and the satisfaction thereof, that passes the title to the defendant, and this may be said to be the accepted doctrine in this country at the present time."

See, also, *Jeffries v. Pankow*, 112 Or. 439 (223 P. 745, 229 P. 903); *Backus v. West*, 104 Or. 129 (205 P. 533); 38 Cyc. 2112, and 26 R. C. L. 1157, § 73.

The original decree which provided for a deficiency judgment against the defendant in event the proceeds from the sale of the cordwood were insufficient to pay the costs of the sale, fees of the custodian and the $450 lien, amounted, in effect, to a judgment or decree against the defendant in favor of the plaintiff for $450 and an attempt to provide the means of enforcing the same by imposing a lien on the cordwood and later foreclosing the same. The means of enforcing a judgment or decree for the payment of money is by the issuance of an execution, and the trial court was, under the facts in this case, without authority to create a lien, as was here attempted.

There is sufficient evidence in the case to support a decree in favor of the plaintiff and against the defendant for $450; therefore, the decree of the circuit court awarding the plaintiff a recovery from the defendant in the sum of $450 is affirmed. In so far as

said original decree attempts to impose a lien on the cordwood, the same is reversed and set aside. The subsequent decree foreclosing the lien attempted to be imposed by the original decree is likewise reversed and set aside. The original decree, except in so far as the same is herein modified, is affirmed; neither party to recover costs in this court.

RAND, C. J., CAMPBELL and KELLY, JJ., concur.