Argued and submitted May 16 at Pendleton, Oregon, affirmed September 18, 1985

# CUSTOM HARVESTING OREGON, INC.,
*Respondent - Cross-Appellant,*

*v.*

# SMITH TRUCK & TRACTOR, INC. et al,
*Appellants - Cross-Respondents.*

## (80-4-377; CA A29526)

706 P2d 186

Kathleen A. Dodds, Portland, argued the cause for appellants - cross-respondents. With her on the briefs were John P. Davenport, and Sussman, Shank, Wapnick, Caplan & Stiles, Portland.

Michael B. Collins, Pendleton, argued the cause and filed the briefs for respondent - cross-appellant.

Before Richardson, Presiding Judge, and Warren and Young, Judges.

YOUNG, J.

## YOUNG, J.

This is an appeal and cross-appeal from a jury verdict for plaintiff on its claim for revocation of acceptance of farm equipment under a retail installment contract. Defendants Smith Truck and Tractor, Inc. (Smith) and Allis-Chalmers Corporation (Allis-Chalmers) appeal, arguing that the trial court erred in denying their motions for directed verdict, because plaintiff failed to give timely notification of its intent to revoke acceptance and substantially changed the condition of the equipment in contravention of ORS 72.6080.[1] Plaintiff cross-appeals and argues that the court erred in granting directed verdicts against its claims for lost profits. We affirm.

In February, 1979, plaintiff ordered three Allis-Chalmers Model N-6 combines from Smith. As the down payment, plaintiff paid $22,900 in cash and traded in equipment valued at $53,769. The balance was to be paid pursuant to a four-year retail installment contract. Smith assigned the contract to Allis-Chalmers. The combines were delivered to plaintiff in June, 1979. The first installment payment was due September 1, 1979.

Plaintiff installed grain bin extensions and "hard-surfaced" the header augers on all three combines. It had problems with the combines, including engine fires, low horsepower, belt failures, feeding problems, plugging and premature wear. Mr. Maughan, president and sole stockholder of plaintiff, repeatedly told defendants about his dissatisfaction with the combines. He and Mr. Smith, president of Smith Truck and Tractor, agreed that no payment would be made on the installment contract until the combines worked properly. Maughan told Mr. Smith that he would return the combines if acceptable solutions to the problems could not be found.

In the fall of 1979, Messrs. Smith and Maughan travelled to the Allis-Chalmers plant in Missouri to determine what changes were going to be made by the manufacturer in order to improve the performance of the combines. At the plant it was agreed by all parties that Maughan would wait until the manufacturer provided an "update kit" used to bring previously manufactured equipment up to the standards of the

---

[1] Defendants also appeal various evidentiary rulings. We find no error.

most recent equipment before deciding what to do. The parties agree that the options available to plaintiff were to pay a $20,000 installment payment and have the update kit installed, trade the N-6 combines for later model N-7 combines or return the N-6 combines to defendants.

The update kit came out in March, 1980. Maughan reviewed it and determined that the changes would not correct the problems with his combines. At that time, two of the combines were at Smith for repairs and the third remained with plaintiff. Maughan called Mr. Smith and told him, "I've decided you can come and get the machines." Smith picked up the third combine and three headers in April, 1980, and resold the combines without notifying plaintiff. On April 14, plaintiff filed a complaint against Smith, alleging breach of warranty, breach of contract and negligence. In November, 1980, plaintiff added Allis-Chalmers as a defendant. In December, 1981, plaintiff amended its complaint to allege revocation of acceptance in addition to the other claims. Defendants counterclaimed for a deficiency after resale.[2]

The issue presented to the jury by plaintiff's claim for revocation of acceptance and defendants' claim for a deficiency was whether plaintiff's return of the combines to Smith constituted an effective revocation of acceptance or whether the return of the combines constituted a voluntary repossession. The jury determined that the return of the combines constituted an effective revocation of acceptance and returned a verdict for $77,772, the amount of plaintiff's down payment plus interest.

Revocation of acceptance of goods is controlled by ORS 72.6080, which provides, in part:

"(1)   The buyer may revoke his acceptance of a lot or commercial unit whose nonconformity substantially impairs its value to him if he has accepted it:

---

[2] Allis-Chalmers counterclaimed for damages for repair and replacements and reasonable rental value. The jury completed the special verdict form as follows:

"Defendant should recover from plaintiff *$00.* for reasonable rental value of *$6,000* for cost of repair and replacement parts."

The trial court interpreted the verdict as awarding no damages for rental value to Allis-Chalmers. That ruling has not been appealed.

"(a) On the reasonable assumption that its nonconformity would be cured and it has not been seasonably cured;

"* * * * *

"(2) Revocation of acceptance must occur within a reasonable time after the buyer discovers or should have discovered the ground for it and before any substantial change in condition of the goods which is not caused by their own defects. It is not effective until the buyer notifies the seller of it."

Defendants do not contest plaintiff's right to revoke acceptance under ORS 72.6080(1). Rather, they argue that the revocation was ineffective under ORS 72.6080(2), because defendants were not timely notified of the revocation and because, by adding grain bin extensions to the combines and hard-facing the augers, plaintiff had substantially changed the condition of the combines.

■ In reviewing a denial of defendant's motion for directed verdict, we view the evidence in the light most favorable to the plaintiff and give the plaintiff the benefit of all reasonable inferences that may be drawn from the evidence. *See Davis v. Portland General Electric Co.,* 286 Or 195, 197, 593 P2d 1135 (1979).

■ We turn to defendants' argument concerning notice. Notice of revocation need not be in any particular form, and under ORS 72.6080 it may be oral, so long as the message is clearly conveyed to the seller that "the buyer intends to consider the contract at an end." *See Melms v. Mitchell,* 266 Or 208, 218, 512 P2d 1336 (1973). Revocation of acceptance, in the most simple terms, is a combination of the buyer's refusal to keep nonconforming goods that he has accepted, either on the reasonable assumption that the nonconformity would be cured or without knowledge of the nonconformity, coupled with notification to the seller that he will not keep the goods. *See,* White & Summers, *Uniform Commercial Code* § 8-1 (2d ed 1980). If the buyer elects to keep the nonconforming goods, his remedy is for breach of warranty. Defendants' primary contention is that by initiating an action for breach of warranty plaintiff evidenced its intention to accept the combines with the nonconformities and sue on the contract. Defendants cite *Allis-Chalmers Corp. v. Sygitowicz,* 18 Wash App 658, 571 P2d 224 (1977), for the proposition that a voluntary return of

goods followed by a suit for breach of warranty forecloses jury consideration of a claim for revocation of acceptance.

■      In *Sygitowicz,* the plaintiff sued for a deficiency following resale of farm equipment. The defendant's answer and counterclaim alleged as affirmative defenses breach of warranty and failure to give proper notice of sale, but did not allege revocation of acceptance. The pleadings were not amended at trial. The Washington Court of Appeals held that the trial court erred in admitting, over objection, evidence on the issue of revocation of acceptance. The court further held that, under RCW 62A.2-608, which is identical to ORS 72.6080, the plaintiff had failed to prove an effective revocation of acceptance:

> "Sygitowicz contends that acceptance was effectively revoked when Northwest Roads was notified of the oil consumption problem a few days after the purchase date. We disagree; notice of breach is not equivalent to notice of revocation of acceptance. While the latter need not be in any particular form and may be implied by conduct, it must inform the seller that the buyer does not wish to keep the goods. Although Sygitowicz was aware of the oil consumption problem from the day the tractor was first put into use, he gave no indication of an intent not to keep the tractor until he delivered it back to Northwest Roads in October, 1972. While such delivery might constitute revocation implied by conduct, the answer and counterclaim filed in the action affirmatively shows that Sygitowicz's concern was breach of warranty and damages for such breach. Accordingly, his recovery was limited to that provided under RCW 62A.2-714 and RCW 62A.2-715, and his defense of revocation of acceptance was ineffective." 18 Wash App at 660. (Citations omitted.)

As the court noted in *Sygitowicz,* return of the goods may be sufficient notice to the seller that the buyer does not intend to keep them. The court held, however, that in the seller's action for a deficiency the buyer could not rely on the affirmative defense of revocation of acceptance when the defense was not pled and when the only evidence of intent to revoke acceptance was the return of the goods.

■      *Sygitowicz* is clearly distinguishable. In the present case, plaintiff did plead revocation of acceptance as well as breach of warranty. All parties understood that no contract payment was due until defendants attempted to cure the

defective combines. All parties agree that one of the options open to plaintiff was to return the combines. The failure of the update kit to cure the mechanical problems resulted in Maughan's immediate oral notice to Smith that he could pick up the combines. Considering the course of dealings between the parties and Maughan's statement to Smith to pick up the remaining combine, the jury could find that the defendants were adequately notified that plaintiff intended to revoke acceptance. The court did not err in denying defendants' motion for directed verdict.

■　The remaining question is whether the addition of the grain bin extensions and the hard-facing of the augers are "substantial changes" in the condition of the combines. The modifications were made before plaintiff experienced problems with the machines. The testimony indicated that the extensions were fastened with bolts and could be easily removed. Maughan testified that the hard-surfacing of the header augers was done to prevent wear. Mr. Smith testified that as part of his business practice he also hard-surfaced augers before sale, although he used a different method. We do not consider the changes to be substantial as a matter of law. The jury was properly instructed and found that the changes were not substantial as a matter of fact. We therefore affirm the trial court's denial of defendants' motion for directed verdict on the issue of substantial changes to the equipment.

We turn to the cross-appeal. Plaintiff claimed $259,230 in general damages under its claim for breach of warranty and $100,000 for lost profits under its breach of warranty and revocation of acceptance claims. The trial court directed a verdict against plaintiff on the breach of warranty claim, because plaintiff failed to prove general damages and failed to prove lost profits with reasonable certainty. The court also directed a verdict on the claim for lost profits on revocation of acceptance, submitting to the jury only plaintiff's claim for return of the down payment. Plaintiff appeals the order granting defendants' motion on the claims for lost profits.

■　A justifiable revocation of acceptance entitles the buyer to recover the purchase price plus any incidental and consequential damages, less expenses saved in consequences

of the seller's breach. ORS 72.7110(1)(b); ORS 72.7130(1). ORS 72.7150(2)(a) provides:

"Consequential damages resulting from the seller's breach include:

"(a)  Any loss resulting from general or particular requirements and needs of which the seller at the time of contracting had reason to know and which could not reasonably be prevented by cover or otherwise * * *."

In order to recover lost profits under ORS 72.7150(2)(a), a plaintiff must, of course, show that the damage resulted from the seller's breach and must prove the amount of lost profits with reasonable certainty. *See Hardwick v. Dravo Equipment Co.,* 279 Or 619, 569 P2d 588 (1977); *Douglas Construction Co. v. Mazama Timber,* 256 Or 107, 471 P2d 768 (1970).

■　Evidence of lost profits consisted of testimony to the effect that plaintiff had contracted for seven harvesting jobs that it either started and could not complete or could not start, because of the "down time" caused by the defective combines. In several instances, the evidence showed that the lost jobs resulted from delays not caused by down time. As to one of the jobs, plaintiff testified that he was substantially underbid by another custom harvester. For some jobs, plaintiff failed to prove that there was a binding agreement for the work. Defendants' motions for directed verdict on the issue of lost profits were properly granted.

Affirmed on the appeal and on the cross-appeal.