Argued and submitted January 22, reversed and remanded as to claim of conversion, otherwise affirmed October 5, 1988, reconsideration denied January 13, petition for review allowed January 31, 1989 (307 Or 340)
See later issue Oregon Reports

# WILLAMETTE QUARRIES, INC.,
*Appellant,*

*v.*

# WODTLI et al,
*Respondents.*

## (84-1138; CA A42921)

761 P2d 1356

Ray Fechtel, Eugene, argued the cause and filed the briefs for appellant.

Thomas J. Reuter, Lebanon, argued the cause for respondents Wodtli. With him on the brief were Kevin J. Freeman, and Morley, Thomas, Kingsley, Reuter & McHill, Lebanon.

Dean M. Quick, Albany, argued the cause for respondents J. C. Compton Contractor, Inc. and Morse Brothers, Inc. With

him on the brief was Weatherford, Thompson, Brickey & Quick, P.C., Albany.

Before Richardson, Presiding Judge, and Newman and Deits, Judges.

DEITS, J.

**DEITS, J.**

Plaintiff initiated this action against Allen and Ruth Wodtli (the Wodtlis) for breach of contract, against the Wodtlis, J. C. Compton Contractor, Inc., and Morse Brothers, Inc. (Morse),[1] for trespass and conversion and against Morse for intentional interference with a contract.[2] At the close of plaintiff's case, the trial court granted both the Wodtlis' and Morse's motions for directed verdict, and judgment was entered in their favor. Plaintiff appeals, contending that there was sufficient evidence on each of its claims to present jury questions. We affirm in part and reverse in part.

We will recite the facts in the light most favorable to plaintiff, giving it the benefit of every reasonable inference supported by the record. *Foster v. Schnell Refrigeration Co.,* 280 Or 411, 414, 571 P2d 497 (1977). On March 31, 1966, the Wodtlis entered into an agreement with plaintiff which granted plaintiff the exclusive right to sever and remove revetment and riprap rock from a 40-acre tract of land which was described in the agreement.[3] The agreement provided that plaintiff was to pay a royalty of ten cents per cubic yard for all rock removed from the premises. Plaintiff paid royalties to the Wodtlis of $5.00 in 1978, $11.00 in 1981 and $225.76 in 1984. The agreement expired on March 31, 1986.[4]

On July 2, 1981, Morse entered into an agreement with the Wodtlis which permitted Morse to remove rock and gravel from the same property. Between 1981 and 1983, Morse removed over 100,000 yards of rock which was crushed by Morse before its removal. Morse did not remove all of the riprap and revetment rock on the premises. In the spring of 1984, plaintiff discovered that the rock had been removed.

■ Plaintiff assigns as error the trial court's granting of defendants' motions for directed verdict. Plaintiff's first claim

---

[1] Because J. C. Compton Contractor, Inc., tendered defense of its interest to Morse Brothers, Inc., we will refer to those parties as "Morse."

[2] Plaintiff's claims against Cascade Crushing, Inc., were dismissed before trial.

[3] L. P. Stubblefield was also a party to the 1966 agreement, which took the place of and superseded an earlier agreement between L. P. and Jessie B. Stubblefield and the Wodtlis.

[4] The term of the contract was initially 10 years; however, it was extended for an additional 10 years.

was for breach of contract against the Wodtlis. It contends that, by entering into a contract with Morse allowing the removal of rock, the Wodtlis breached their agreement giving plaintiff the exclusive right to remove revetment and riprap rock from the premises. The Wodtlis argue that the directed verdicts were proper, because their contract with plaintiff was not valid.[5] They argue that plaintiff was granted the right to establish a quarry to remove revetment and riprap rock from a five-acre tract within the 40-acre tract owned by the Wodtlis and that the five-acre tract is not sufficiently described in the agreement to comply with the Statute of Frauds. We do not agree. Plaintiff was granted the exclusive right to quarry and remove revetment and riprap rock from the entire 40-acre tract, which was described in the agreement as:

> "The Northeast Quarter of the Southeast Quarter of Section 26, Township 13 South, Range 1 West of the Willamette Meridian, in Linn County, Oregon, containing 40 acres, more or less."

That description satisfies the Statute of Frauds. *High v. Davis,* 283 Or 315, 584 P2d 725 (1978).

■ The Wodtlis also argue that there was no consideration for the contract. However, before removing any rock, plaintiff was required to pay the Wodtlis $500. Although the payment was to be applied against any royalty payments to be made by plaintiff to the Wodtlis during the last year of the contract, it was non-refundable, even if plaintiff owed no royalty payments in the last year of the contract. That was consideration.

■ The Wodtlis also contend that the directed verdicts on the contract claim were proper, because plaintiff failed to prove damages. We agree. Plaintiff's breach of contract claim sought only damages for lost profits. In an action for lost profits, a plaintiff must prove with "reasonable certainty" that profits were lost and that the loss was a result of the

---

[5] The Wodtlis and Morse also argue that the Wodtlis' agreement granting plaintiff the exclusive right to remove revetment and riprap rock was not breached, because the only rock ultimately removed was crushed rock and that revetment and riprap rock does not include crushed rock. Plaintiff argues to the contrary. Although that may have been an appropriate fact question for the jury, we need not decide this issue because, even assuming, as plaintiff contends, that revetment and riprap rock does include crushed rock, plaintiff failed to prove damages.

breach. *Buck v. Mueller,* 221 Or 271, 282, 351 P2d 61 (1960); *Hillstrom v. McDonald's Corporation,* 88 Or App 444, 448, 746 P2d 222 *rev den* 305 Or 103 (1988). In *Welch v. U.S. Bancorp,* 286 Or 673, 704, 596 P2d 947 (1979), the Supreme Court addressed the meaning of "reasonable certainty":

> "The real use of the term reasonable certainty seems to be to screen out an issue from the jury when the court has concluded that the evidence, *taken as a whole,* is clearly insufficient to establish the fact sought to be proved." (Emphasis supplied.)

■ Plaintiff contends that the profits which it lost as a result of the Wodtlis' breach can be calculated by multiplying the amount of revetment and riprap rock allegedly taken by Morse by the price that plaintiff would have received for the rock if it had been able to sell it. Plaintiff asserts that it would have been able to sell the rock for $1.80[6] per yard, exclusive of the costs of production. The problem with the argument is that the the exclusive right to remove revetment and riprap rock did not secure the right to remove a specific amount of rock, but rather gave plaintiff an unlimited right to remove rock for a specific period of time which expired in March, 1986. Thus, even if plaintiff did present evidence that Morse removed a certain amount of rock which could have been sold at a certain price, it does not follow that it proved lost profits. There was no evidence that plaintiff would have been able to sell *any* rock. *See Meader v. Francis Ford, Inc.,* 286 Or 451, 458, 595 P2d 480 (1979); *Custom Harv. Oregon v. Smith Truck and Tractor,* 75 Or App 274, 281, 706 P2d 186 (1985); *cf. Lawrence v. Underwood,* 81 Or App 533, 726 P2d 1189 (1986) (expert witness testified as to motel's lost profits on basis of actual operation of comparable motel in same town, financial data regarding motel industry and motel's financial history); *VonRavensburg v. Houck-Carrow Corp.,* 60 Or App 412, 653 P2d 1297 (1982) (plaintiff testified as to ice business' lost profits on basis of data regarding business' financial history). More importantly, there was no evidence that, between the time when Morse began to remove rock in 1981 and the expiration of plaintiff's right, plaintiff was prevented from completing a sale or furnishing a bid due to a lack of revetment

---

[6] This price was the retail price on which plaintiff's royalty payments were based in the agreement.

and riprap rock. Additionally, there was evidence that revetment and riprap rock continued to exist in the quarry even after the expiration of plaintiff's contractual right to remove rock and that plaintiff was able to complete a sale of rock in 1984. Although plaintiff was not required to prove the exact amount of lost profit, there was *no* proof that it lost *any* profits. *See Meader v. Francis Ford, Inc., supra.*

■ ■   The trial court also granted a directed verdict on plaintiff's claim against the Wodtlis and Morse for trespass. Plaintiff assigns this as error, arguing that the right to sever and remove revetment and riprap rock gave it a possessory interest in the rock on the Wodtlis' property and that, by removing rock, Morse and the Wodtlis trespassed on plaintiff's interests. We do not agree. Plaintiff's right to sever and remove rock from the Wodtlis' land was a profit *a prendre.* In *Jackson County v. Compton,* 289 Or 21, 24, 609 P2d 1293 (1980), the Supreme Court cited with approval the *Restatement of Property* definition of a profit *a prendre* as being similar to and subject to the same rules as easements. The *Restatement* uses the term "easement" to designate both interests. *Restatement of Property,* § 450, *special note* at (1944). Accordingly, a profit *a prendre,* like an easement, is a non-possessory interest, *Restatement of Property,* § 450, *comment b* at 2903 (1944); Hahner, "An Analysis of Profits A Prendre," 25 Or L Rev 217 (1946), and will not sustain an action for trespass. *See Rogers v. Donovan,* 261 Or 124, 125 n 1, 492 P2d 768 (1972); *see also Boyer v. Anduiza,* 90 Or 163, 165, 175 Pac 853 (1918). The court did not err in directing a verdict for the Wodtlis and Morse on this claim.

■ ■   Plaintiff also assigns error to the directed verdict on its claim against the Wodtlis and Morse for conversion. Conversion is an "intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel." *Mustola v. Toddy,* 253 Or 658, 663, 456 P2d 1004 (1969), *citing Restatement (Second) Torts,* § 222A (1965). Until severed, the revetment and riprap rock is an interest in the land. However, once severed, it becomes an interest in a chattel owned by the owner of the profit. *See Jackson County v. Compton, supra.* The Wodtlis and Morse contend that there is no evidence that plaintiff severed revetment and riprap rock which was subsequently

converted by either of them. The evidence, however, is that in 1978, plaintiff had severed 1390 cubic yards of rock which had remained in the quarry and that the rock had been removed. Although there is no evidence from which a jury could infer that the Wodtlis took the rock, the evidence that Morse removed some rock from the property during this time period would allow a jury to infer that Morse took it. Consequently, there was sufficient evidence of conversion to present the claim for conversion against Morse to the jury.

■ ■ Plaintiff's final claim is for damages for Morse's alleged intentional interference with plaintiff's contractual rights with the Wodtlis. In order to establish a claim for intentional inference with an economic relationship, a plaintiff must prove that a defendant's interference was intentional, that the defendant interfered with an improper purpose or by improper means and that the plaintiff was damaged as a result of the inference. *Straube v. Larson,* 287 Or 357, 360-362, 600 P2d 371 (1979); *Ron Tonkin Gran Turismo v. Wakehouse Motors,* 46 Or App 199, 208, 611 P2d 658, *rev den* 289 Or 373 (1980). Defendant argues that, even if plaintiff did establish all other elements of this claim, it failed to prove damages. The damages alleged in plaintiff's complaint were for the loss of its product and the loss of its investment in creating, improving and maintaining a marketable quarry. Plaintiff's theory of the measure of damages on this claim is similar to its theory of lost profits against the Wodtlis. The only evidence that it presented to establish the value of the rock was that the rock could be expected to be sold for $1.80 per yard. That evidence suffers from the same deficiencies as plaintiff's claim for lost profits on its contract claim. There was no evidence regarding plaintiff's investment in creating and maintaining the quarry pursuant to the 1966 contract. The court did not err in directing a verdict on the claim.

Reversed and remanded as to claim of conversion against Morse;[7] otherwise affirmed.

---

[7] In view of our decision on plaintiff's breach of contract claim, we affirm the trial court's award of attorney fees to the Wodtlis.