Argued and submitted May 3, the decision of the Court of Appeals affirmed, the judgment of the circuit court reversed and case remanded to circuit court on conversion claim against J. C. Compton Contractors and Morse Brothers, Inc.; otherwise affirmed October 26, 1989

## WILLAMETTE QUARRIES, INC.,
*Petitioner on Review,*

*v.*

## WODTLI et al,
*Respondents on Review.*

(CC 84-1138; CA A42921; SC S35695)

781 P2d 1196

Ray Fechtel, of Ray Fechtel, P.C., Eugene, argued the cause and filed the petition for petitioner on review.

Thomas J. Reuter, of Morley, Thomas, Kingsley, Reuter & McHill, Lebanon, argued the cause for respondents on review Wodtli.

Dean M. Quick, of Weatherford, Thompson, Brickey & Quick, P.C., Albany, argued the cause for respondents on review J. C. Compton Contractor, Inc., and Morse Brothers, Inc.

PETERSON, C. J.

## PETERSON, C. J.

The plaintiff filed this action after discovering that rock had been removed from a quarry from which the plaintiff by contract had an exclusive right to remove a certain type of rock. After the plaintiff rested, the trial court granted a directed verdict. The Court of Appeals affirmed in part and reversed in part. *Willamette Quarries v. Wodtli,* 93 Or App 306, 761 P2d 1356 (1988). We affirm the Court of Appeals.

### ANALYSIS OF THE EVIDENCE

This being an appeal from a directed verdict, we consider the evidence in the light most favorable to the plaintiff, giving the plaintiff the benefit of every reasonable inference supported by the record. *Foster v. Schnell Refrigeration Co.,* 280 Or 411, 414, 571 P2d 497 (1977). In 1962, the plaintiff's predecessors in interest, L.P. and Jesse Stubblefield, signed a quarry agreement with the defendants Allen and Ruth Wodtli. This contract would have expired in 1982. After succeeding to the Stubblefields' interest, the plaintiff, Willamette Quarries, entered into a new quarry agreement with the Wodtlis on March 31, 1966. This contract superseded the 1962 contract and expired on March 31, 1986.

The contract between Willamette Quarries and the Wodtlis defined with precision a 40-acre tract of land owned by the Wodtlis. The contract granted the plaintiff two rights. First, it allowed the plaintiff to establish a quarry for the purpose of severing and removing "revetment and/or riprap rock." It provided that this quarry "shall be located upon and confined to a tract not to exceed five (5) acres in said 40 acre subdivision, which has heretofore been agreed upon by the parties." Second, it stated that the plaintiff had the exclusive right to remove "revetment and/or riprap rock from the premises" and that "no rock of this type shall be removed from the other quarries or quarry sites on the property of Vendors without the written consent of the Vendees." The contract stated that the plaintiff would pay the Wodtlis ten cents per cubic yard for the rock. The ten-cent-per-yard figure was based on the fact that the plaintiff expected to sell the rock for $1.80 per cubic yard. The contract also stated that the plaintiff had already paid a $50 exploration fee and would pay an additional $500 to the Wodtlis before commencing its quarrying operation.

The plaintiff thereafter constructed a road to its quarry site, removed the soil over the rock and dumped it in a waste area, and commenced quarry operations. It also stockpiled 1390 cubic yards of rock described by one witness as "riprap rock."

In 1981 the defendant Morse Brothers entered into an agreement with the defendants Wodtli which allowed Morse Brothers to remove rock and gravel from this same 40-acre tract. This contract states that Morse Brothers shall respect the contractual rights of the plaintiff, Willamette Quarries, and it erroneously states that the plaintiff's contract with the Wodtlis "expires in 1982."[1] Between 1981 and 1983, Morse Brothers extracted rock from the 40-acre tract, including rock from the plaintiff's quarry, some of which it sold to defendant J. C. Compton Contractors.

The plaintiff alleged and introduced evidence tending to prove that Morse Brothers severed and removed rock from the plaintiff's quarry and also removed 1390 cubic feet of rock previously stockpiled by the plaintiff. The plaintiff's complaint alleged breach of contract by the Wodtlis, intentional interference with contractual relations by Morse Brothers, and trespass and conversion by all the defendants. The trial court granted a directed verdict but did not specify the ground on which it was granted. The Court of Appeals reversed only that part of the conversion claim against Morse Brothers and J. C. Compton Contractors pertaining to the 1390 cubic-yard stockpile. *Willamette Quarries v. Wodtli, supra,* 93 Or App at 311-12.

## ANALYSIS OF THE ISSUES

### Statute of Frauds

The contract provision conferring the right to extract rock from the Wodtlis' property grants the plaintiff a profit a prendre, which "is the right to acquire, by severance or removal from another's land, some thing or things previously constituting a part of the land." *Jackson County v. Compton,* 289 Or 21, 24, 609 P2d 1293 (1980). We have stated that "[a] grant of a profit a prendre is a grant of an interest in the land

---

[1] This error apparently stems from the fact that the Wodtlis' contract with the plaintiff's predecessors was for a term expiring in 1982. See text at 308 Or 408.

itself, and within the statute of frauds." *High v. Davis,* 283 Or 315, 322, 584 P2d 725 (1978).

ORS 41.580, the statute of frauds, provides in pertinent part:

> "In the following cases the agreement is void unless it, or some note or memorandum thereof, expressing the consideration, is in writing and subscribed by the party to be charged, or by the lawfully authorized agent of the party; evidence, therefore, of the agreement shall not be received other than the writing, or secondary evidence of its contents in the cases proscribed by law:
>
> "* * * * *
>
> "(5)  An agreement for the leasing for a longer period than one year, or for the sale of real property, or of any interest therein."

The defendants maintain that the entire contract violates the statute of frauds because the location of the five-acre tract is not described in the contract.

■ ■  Although the failure to define the five-acre tract might prevent enforcement of the contract were the contract not performed, the general rule is that the statute of frauds "only applies to executory, as distinguished from [performed] contracts; if an oral contract, otherwise within the Statute, is completely executed or performed it is taken out of the operation of the Statute." 3 Williston, Contracts 725-26, § 528 (3d ed 1961). Full performance of a promise by one party removes that part of the contract from the operation of the statute. *Id.* at 732. Thus, in *Wiggins v. Barrett & Associates, Inc.,* 295 Or 679, 681, 669 P2d 1132 (1983), the plaintiffs granted an easement across their property to the defendants on which the defendants were to build a sewer line. In return the defendants orally promised to provide sewer hook-ups for the plaintiffs. The defendants failed to provide these hook-ups and the plaintiffs sued for breach of contract. The defendants interposed the statute of frauds. The court held that the plaintiffs' full performance took the oral promise out of the statute of frauds. 295 Or at 684-86.

*Grover v. Sturgeon,* 255 Or 578, 581-82, 469 P2d 617 (1970), involved a claim for breach of an oral promise by the

plaintiff to pay a $12,000 bonus to the defendant if the defendant continued to manage the plaintiff's car dealership until it was sold. After the defendant performed his promise, the plaintiff reneged, asserting that the statute of frauds barred enforcement. We declared that "the statute has no application where the oral promise has been performed." 255 Or at 584. *See also Kneeland v. Shroyer,* 214 Or 67, 88, 328 P2d 753 (1958) (statute of frauds no bar to enforcement of oral promise fully performed by one party within one year); *Malzer v. Schisler,* 67 Or 356, 357, 136 P 14 (1913) (oral contract taken out of the statute of frauds when one party fully performs).

When this case went to trial on December 15, 1986, the twenty-year term of the contract had expired. Both parties had fully performed with respect to the five-acre-extraction provision. The plaintiff also paid royalties for the rock that it removed from the defendants' property. The plaintiff was not impeded from severing and removing as much rock as it wished. Having been fully performed, this provision of the contract is taken out of the statute of frauds.[2]

### Breach of Contract

The plaintiff claims that the Wodtlis breached the quarrying contract by allowing Morse Brothers to remove riprap rock from the 40-acre tract. The plaintiff alleged that it had been "damaged by loss of profits and sales of its rock products in the sum of not less than $191,250." In an effort to prove these damages, the plaintiff introduced evidence that Morse Brothers removed over 100,000 yards of riprap rock from the Wodtlis' property and that the market price for such rock was between $1.80 and $2.00 per yard. The Court of Appeals held that this was insufficient to prove damages with reasonable certainty. *Willamette Quarries v. Wodtli, supra,* 93 Or App at 310-11. We agree.

---

[2] Even were we to find that this provision violated the statute of frauds, the remainder of the contract (giving the plaintiff the right to exclude all others from removing riprap from the 40 acres) may well be severable and enforceable. The plaintiff paid various types of consideration here—a $50 exploration fee, a $500 lump sum, and royalties—which may be allocable to the separate promises in the contract. Moreover, these promises are probably not so interdependent that the performance of one promise would be meaningless without performance of the other promise. *See Jewell v. Harper,* 199 Or 223, 226, 258 P2d 115, 260 P2d 784 (1953) *reh'g denied* 199 Or 236 (1953); *Pettigrove v. Corvallis Lbr. Mfg. Co.,* 143 Or 33, 35, 21 P2d 198 (1933); *Southwell v. Beezley,* 5 Or 458, 461-62 (1875).

■     We have stated that to recover for lost profits or sales, a plaintiff must prove these damages with "reasonable certainty." *Buck v. Mueller,* 221 Or 271, 282-83, 351 P2d 61 (1960). *See also Welch v. U.S. Bancorp.,* 286 Or 673, 704-05, 596 P2d 947 (1979). Loss of future profits may be established by proof of past profits of an established business, *Buck v. Mueller, supra,* 221 Or at 282-83, or by expert projections based upon tests performed under substantially similar conditions. *Hardwick v. Dravo Equipment Company,* 279 Or 619, 622-25, 569 P2d 588 (1977). Lost profits or sales, however, are not proved merely by testimony of unverifiable expectations of profits. *Meader v. Francis Ford, Inc.,* 286 Or 451, 458, 595 P2d 480 (1979); *Feeney & Bremer Co. v. Stone,* 89 Or 360, 378, 171 P 569, 174 P 152 (1918).

■     The plaintiff's evidence was insufficient to prove lost profits or sales. The plaintiff adduced no evidence that any sales were hampered or lost because of the defendants' alleged breach. Indeed, the evidence showed that the plaintiff bid unsuccessfully on several contracts calling for riprap rock. The record also establishes that, even after the Wodtlis' alleged breach, there was plenty of riprap rock in the quarry to supply the plaintiff's possible future needs. Far from proving the plaintiff's lost sales or profits, the evidence establishes only what the Morse Brothers may have gained by way of the breach. The record does not support the conclusion that, but for the alleged breach, J. C. Compton Contractors or others would have purchased riprap rock from Willamette Quarries rather than from Morse Brothers. The trial court properly directed a verdict on this claim.

### Interference With Contract

■     To recover for intentional interference with economic or contractual relations, a plaintiff must prove that the interference was intentional (*i.e.* that it was purposeful or substantially certain to result from the conduct engaged in), that the interference was accomplished through improper means or with an improper motive, and that it damaged the plaintiff. *Straube v. Larson,* 287 Or 357, 360-61, 600 P2d 371 (1979).

■     If the plaintiff is to recover against defendant Morse Brothers for interference, that recovery must be limited to the period up to and including 1982 because there is no evidence to

show that Morse Brothers knew that the contractual relation between the plaintiff and the Wodtlis' continued after that date. Indeed, the contract between Morse Brothers and the Wodtlis stated (mistakenly) that the plaintiff's contractual interests in the Wodtlis' property would terminate in 1982. Without evidence establishing knowledge of a contractual relationship, intentional interference with that contractual relationship cannot be proved.

■     Further, to recover for interference with contract by Morse Brothers during and before 1982, the plaintiff must plead and prove damages. The plaintiff alleged damages of "not less than $200,000, by virtue of loss of plaintiff's product and loss of investment in creating, improving and maintaining a marketable quarry on the property of Defendants Wodtli." The record does not support these allegations. As stated, the record reveals that even after Morse Brothers removed riprap rock from the premises, the quarry contained sufficient riprap rock to meet the plaintiff's needs. The trial court properly directed a verdict on this claim.

*Conversion*

■ ■     The plaintiff seeks to recover for the alleged conversion of both a 1390 cubic-foot stockpile of rock that the plaintiff had severed and all of the riprap rock which defendant Morse Brothers severed and removed from the entire property. Conversion " 'is an intentional exercise of dominion or control over a chattel which so seriously interferes with the right of another to control it that the actor may justly be required to pay the other the full value of the chattel.' " *Mustola v. Toddy,* 253 Or 658, 663, 456 P2d 1004 (1969) (quoting and adopting Restatement (Second) Torts § 222A (1965)). This court has also held that "[o]ne must be entitled to immediate possession of a chattel before he [or she] can successfully contend that the actor's failure to yield possession constitutes conversion." *Artman v. Ray,* 263 Or 529, 531, 501 P2d 63, 502 P2d 1376 (1972).

■     A profit a prendre gives the profit holder the right to sever and remove from the land of another a physical substance. *High v. Davis, supra,* 283 Or at 322. Severance transforms the physical substance from real to personal property. *Jackson County v. Compton, supra,* 289 Or at 25. In the absence of a contractual arrangement between the parties to

the contrary, the profit holder obtains title to quarried rock as personal property upon severing it from the ground. *Babler Bros., Inc. v. Hebener,* 267 Or 414, 418 n 1, 517 P2d 653 (1973); *see also Jackson County v. Compton, supra,* 289 Or at 29 & n 1.[3]

■       Having severed and stockpiled 1390 cubic feet of rock from the quarry, the plaintiff acquired title to and the right to immediate possession of that rock, which is a sufficient basis for a conversion action. Because there was evidence from which the jury could have inferred that the stockpile was riprap rock and that Morse Brothers removed this stockpile, the jury should have been allowed to consider this claim and to determine whether (or to what extent) the stockpile consisted of riprap rock.

■       The plaintiff, however, is not entitled to recover damages for the rock severed and removed by Morse Brothers. Because the plaintiff did not itself sever this rock, it did not acquire title. Moreover, the contract did not give to the plaintiff either title to or the right to immediate possession of *all* riprap rock on, within, or removed from the Wodtlis' property. The contract merely gave the plaintiff the right (1) to remove as much riprap rock as it wished from the five-acre plot and (2) to exclude others from removing riprap from the entire 40 acres. That the Wodtlis' arguably breached this latter provision is no basis for finding that the plaintiff acquired either title to or the right to immediate possession of rock severed and removed in violation of the contract. Moreover, the evidence indicates that the plaintiff had little need for riprap rock during the period when Morse Brothers was removing rock from the premises and that a large amount of riprap rock remained even after Morse Brothers finished severing and removing rock. Upon the record, we are unable to determine that the plaintiff had any possessory interest in the rock severed and removed by Morse Brothers.[4]

---

[3] The title to the severed rock is a defeasible title. It terminated at the expiration of the time for removal of the rock. *Jackson County v. Compton,* 289 Or 21, 26-28, 609 P2d 1293 (1980).

[4] There is a split of authority on whether the right to possession at some future time is sufficient to support an action for conversion. *Compare Benton v. Div. of State Lands & Forestry,* 709 P2d 362, 365-66 (Utah 1985) and *Del E. Webb Corp. v. Structural Materials Co.,* 123 Cal App 3d 593, 176 Cal Rptr 824, 833 (1981) *with* Restatement (Second) Torts § 243 (1965), which provides:

"One who is subject to liability for conversion to a person in possession of a

## Trespass

■ The plaintiff contends that the owner of an exclusive profit a prendre has an interest in land that should be protected by way of an action for trespass to land. Assuming that the plaintiff has a remedy in trespass,[5] there is no evidence to establish the amount of rock severed and removed from the five-acre tract,[6] or the amount paid by the other defendants to the Wodtlis for such rock. The plaintiff's trespass claim fails.

## CONCLUSION

In sum, we hold that: (1) the statute of frauds does not bar the plaintiff's claim for breach of contract because the arguably invalid provision of the contract had been fully performed; (2) the plaintiff did not prove damages for breach of contract; (3) the interference-with-contract claim fails because of insufficient evidence of damages; (4) the plaintiff's claim for conversion succeeds only with respect to rock which the plaintiff stockpiled, and then only to the extent that the stockpiled rock was riprap; and (5) the plaintiff's trespass

chattel, or to one entitled to its immediate possession, is also subject to liability to a person entitled to the future possession of the chattel for harm caused to such person's interest in it."

We need not decide that question here because the plaintiff's future interest in riprap rock was defined by how much it chose to sever and remove.

[5] It is not clear whether the owner of a profit can sue in trespass. One text writer, Tiffany, concluded that the holder of an exclusive profit may "maintain an action of trespass quare clausum fregit against a person interfering therewith." 3 Tiffany, Law of Real Property 428 & n 11, § 839 (3d ed 1939). Tiffany cites to five English cases, all decided during the nineteenth century, standing for the proposition that a holder of a profit a prendre may recover in trespass from one who severs and removes the subject matter of the profit from the land. Only three of these five cases are on point, and of those three, none are compelling. Similarly, another commentator opined that an exclusive profit holder may enforce the profit by means of an action in trespass. Hahner, *An Analysis of Profits A Prendre,* 25 Or L Rev 217, 240 & n 114 (1946). However, the only American case cited by this commentator supports the view that a profit a prendre may not be enforced through actions for trespass to land. *Id.* at 240 n 114 (citing *Clark v. Way,* 11 Rich (S C L) 621 (1858)).

Adopting the approach of the Restatement of Property § 450 *comment f* at 2905-06 (1944), this court treats profits as a subspecies of easements. *Jackson County v. Compton, supra,* 289 Or at 25 (1980). We have stated that, because an easement is not a possessory interest in land, interference with an easement does not give rise to an action for trespass by the easement holder. *Rogers v. Donovan,* 261 Or 124, 125 n 1, 492 P2d 768 (1972).

The plaintiff makes no claim that it is entitled to nominal damages.

[6] The plaintiff's possessory interest in the other 35 acres clearly is insufficient to support a trespass claim.

claim fails because the plaintiff's evidence of damages is insufficient.

For the foregoing reasons, the decision of the Court of Appeals is affirmed. The judgment of the circuit court is reversed and the case is remanded to the circuit court on the conversion claim against J. C. Compton Contractors and Morse Brothers, Inc.; otherwise affirmed.