Argued and submitted September 11, reversed and remanded November 13, 1991

# HICKMAN CONSTRUCTION, INC.,
### and Funderburk Construction, Inc.,
### *Appellants,*

*v.*

# SOUTH UMPQUA STATE BANK,
### *Respondent.*

### (CV89-0193; CA A66304)

820 P2d 838

Thomas F. Spaulding, Portland, argued the cause and filed the briefs for appellants.

Inge D. White, Roseburg, argued the cause for respondent. With her on the brief were Dan W. Clark and Dole, Coalwell & Clark, P.C., Roseburg.

Before Richardson, Presiding Judge, and Deits and De Muniz, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Plaintiffs brought this action for intentional interference with business relations, contending that defendant bank wrongfully repossessed plaintiffs' equipment and thereby prevented them, as joint venturers, from performing a road maintenance project for the United States Army. The trial court directed a verdict for defendant. Plaintiffs appeal, and we reverse.

John Hickman is the principal of plaintiff Hickman Construction, Inc. (Hickman). Ed Funderburk was the principal of plaintiff Funderburk Construction, Inc. (Funderburk). The two corporations formed the joint venture to bid on the Army contract and were notified on April 15, 1988, that theirs was the lowest qualified bid. Defendant had a security interest in Funderburk's equipment and machinery as collateral for an equipment loan. Defendant also stood in various other creditor relationships with Funderburk, and it maintains that the transactions were "cross-collateralized." Funderburk's payment record on the debts was spotty.

On April 17 or 18, Ed Funderburk tendered a payment on the equipment loan to defendant. According to plaintiffs' evidence, defendant failed to apply the payment to interest first, with the result that it mistakenly concluded that there was a delinquency. On April 27, Ed Funderburk died. The next day, defendant contacted Ed's daughter, Sandra Corno, who was an officer of Funderburk, to inform her of the status of the loans and that defendant intended to move the secured equipment to a new location for safety purposes. Corno and defendant's officers met on April 29 and again on May 3. At the earlier meeting, Corno surrendered the keys to the equipment "under protest." Defendant formally repossessed the equipment on May 4. When the Army learned of the repossession, it awarded the contract to another bidder:

Before Corno's May 3 meeting with defendant's officers, the officers had understood John Hickman to be a "partner" of Ed Funderburk. At that meeting, however, Corno made a concerted effort to downplay his role. She referred to him as an "employee" and noted that she would "handle all the money." She explained at trial that the reason

was her concern that, because she is a woman, defendant's personnel would deal with him rather than her if they thought that he was a manager of the project.

The trial court directed the verdict on the grounds that the jury could not reasonably find that defendant was aware that Hickman was a joint venturer or principal rather than an employee of Funderburk and that there was no evidence that defendant acted with improper motives or means rather than for legitimate business reasons. Plaintiffs assign error to both facets of the ruling.

The parties agree with the trial court's approach that plaintiffs were required to prove that defendant was aware of the nature of the relationship between *them*. In *Willamette Quarries v. Wodtli*, 308 Or 406, 413, 781 P2d 1196 (1989), the court said that, "[w]ithout evidence establishing knowledge of a contractual [or economic] relationship, intentional interference with that contractual relationship cannot be proved." Here, the relationship that was allegedly disrupted was between plaintiffs and the Army, not the one between the two plaintiffs themselves. Arguably, however, Hickman's status as a principal had to be proved in order to show that both plaintiffs, rather than Funderburk alone, had a business relationship with the Army. In any event, we will assume the parties' premise.

■  The parties disagree about whether April 29 or May 4, the date of the "formal" repossession, was the day that the alleged interference occurred. Defendant maintains that the later date is the relevant one, as a matter of law; plaintiffs argue that which date is relevant is a question of fact. The significance of the dispute is that, according to defendant, its earlier awareness that Ed Funderburk and John Hickman were "partners" dissipated on May 3, when Corno suggested that John Hickman was a mere employee. We disagree. It remained a question of fact whether defendant's earlier understanding continued or was displaced completely by Corno's statements at the meeting. Moreover, there was evidence that, after the May 3 meeting, John Hickman was referred to as a partner in an interoffice memorandum of defendant's, and that defendant consulted financial institutions about John Hickman after that date. The jury could find from the evidence that defendant was aware of the nature of

John Hickman's role and of plaintiffs' relationship, and so the first ground for the directed verdict was error.

■        Plaintiffs' next argue that "wrongful seizure of collateral constitutes improper means" and that the court therefore also erred by granting the directed verdict for the second reason. In its brief, defendant accepts three of plaintiffs' critical premises:

1.   "Defendant concedes that the improper seizure of collateral could rise to the level of improper means, since it would violate both statute and a rule of common law."

2.   "Defendant * * * concedes that privilege is not at issue when a showing is made that a defendant acted with improper means."

3.   "Plaintiffs' argument that the defendant acted with improper means is predicated entirely upon the theory that the equipment loan was not past due at the time of the repossession. Because the court granted the motion for directed verdict at the close of plaintiffs' case, there is no conclusive evidence in the record with respect to this issue."[1]

Taken together, we understand the concessions to mean that defendant does not contend that, as a matter of law, wrongful repossession could not give rise to the tort of intentional interference.

Defendant contends, however:

"What [plaintiffs'] argument ignores, however, are the other provisions in the security agreements which cross-collateralize the loans and give the defendant the right to repossess if it deems itself insecure. Regardless of the status of the equipment loan, the line of credit was in default, and had been for some time. Under the cross-collateralization provisions of the security agreements, this in and of itself gave the defendant the right to repossess. In addition, the equipment loan security agreement gave the defendant the right to repossess if it reasonably deemed itself insecure.

"* * * * *

"The defendant in this case can be liable for intentional interference with a contract only if it acted with 'improper means' when repossessing the collateral. In this case, proving improper means would require plaintiffs to put on

---

[1] We express no view on the merits of any of these points.

evidence negating any justifiable claim to repossess that defendant would have under the Uniform Commercial Code. No reasonable juror could conclude that plaintiffs succeeded in doing this, regardless of whether the equipment loan was in default."

■    We disagree. Plaintiffs offered evidence not only that the repossession was based on the supposed interest arrearage under the equipment loan, but also that defendant could not or would not have seized the equipment under any other provision of the security instruments. More fundamentally, a plaintiff's burden in an intentional interference action is not to negate every possible proper basis for the defendant's action. All that is necessary to prove improper means or motives is evidence of *an* improper means or motive that the jury can believe was *the* reason for the action. *See Harm v. Central Life Assurance Co.,* 107 Or App 708, 714, 813 P2d 1103 (1991). Plaintiffs met that burden here, and the directed verdict was error.

Reversed and remanded.